
AUC
for
AUSA Gok
3/26/19

## UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAR 26 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )   Case No.  '19MJ8964
One White Newmind Cellular Phone  )
IMEI #867695030014694  )
  )

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit of Special Agent John Chase, Drug Enforcement Administration

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S.A. John Chase, Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/26/19

*Judge's signature*

City and state: El Centro, CA

Hon. Ruth B. Montenegro, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>One white Newmind cellular phone (shaped like a racecar)
>IMEI: 867695030014694
>**(Target Device)**;

The **Target Device** is currently in the possession of the Drug Enforcement Administration, 2425 La Brucherie Road, Imperial, CA 92251, evidence vault.



## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 12, 2018 to February 12, 2019:

a. tending to indicate efforts to import fentanyl, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substances from outside the United States into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of fentanyl, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

 f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841.



# AFFIDAVIT IN SUPPORT OF WARRANT

I, John Chase, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for warrant to search a white Newmind cellular phone, which is shaped like a racecar, IMEI: 867695030014694 ("**Target Device**"), as described in Attachment A (incorporated herein by reference.)

2. The **Target Device** was seized from David Muros Torres ("Defendant") incident to his arrest for violation of Title 21, United States Code, Sections 841(a)(1), Possession with the Intent to Distribute a Controlled Substance, at the U.S. Border Patrol ("USBP") checkpoint on Highway 78 near Blythe, Imperial County, California on February 12, 2019. The **Target Device** is currently in the possession of the Drug Enforcement Administration, 2425 La Brucherie Road, Imperial, CA 92251, secured within the evidence vault.

3. I seek authority to search the **Target Device** and to seize evidence of crimes, specifically, violations of Title 21, United States Code, Section 841, as described in Attachment B (incorporated herein by reference), for the time period August 12, 2018 through February 12, 2019.

4. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, described in Attachment B.

5. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

## EXPERIENCE AND TRAINING

6. I am Special Agent with the Department of Justice, Drug Enforcement Administration ("DEA"), and have been so employed since April 2018. I am currently assigned to the Imperial County District Office, and have been so since October 2018. Prior to my current employment, I was employed as an Assistant Vice President and Compliance Officer for a global custodial bank specializing in Bank Secrecy Act and Anti-Money Laundering Compliance.

7. In 2014, I graduated from Northeastern University (Boston, MA) with a Bachelor of Science in Criminal Justice and a second Bachelor of Science in Business Administration with a concentration in Accounting. Upon being hired as a DEA Special Agent, I attended an eighteen week DEA academy in Quantico, Virginia, where I received training in all aspects of narcotics investigations, including, but not limited to, the enforcement of drug laws, investigation of drug trafficking, drug recognition and terminology, case management, undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal.

8. I am familiar with and have used many of the traditional methods of investigation, including, visual surveillance, informant and witness interviews, defendant debriefings, undercover operations, and the seizure of drug evidence.

9. I have participated in drug investigations leading to the seizure of illegal narcotics and the arrests of individuals for drug law violations. Although the nature of my ongoing work with DEA requires that I keep apprised of recent trends and developments involved in the investigations of narcotics traffickers, I regularly communicate with agents from the United States Border Patrol, Customs and Border Protection, Homeland Security Investigations, Federal Bureau of Investigations and various other state and local law

2

enforcement officers. Furthermore, I have discussed their investigative techniques and experiences with them operating within the Southern District of California.

10. Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

11. I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

12. By virtue of my employment as a Special Agent with DEA, I have performed various tasks, which include, but are not limited to:

    a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    b. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

3

    c. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics.

  13. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

  14. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Furthermore, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

  15. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo

will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

16. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

17. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

5

Specifically, I know based upon my training, education, and experience investigating these conspiracies that a search of cellular/mobile telephone yields evidence:

a. tending to indicate efforts to import fentanyl, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substances from outside the United States into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of fentanyl, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

18. On February 12, 2019, at approximately 5:30 p.m., Defendant and his girlfriend, Millie Madrigal, approached the USBP checkpoint on Highway 78 in Imperial County, near Blythe, California. Defendant was the driver and registered owner of the silver Dodge Journey with Arizona license plate CDH-3919 (the "Vehicle"). As the

Vehicle passed through the pre-primary area, United States Border Patrol Agent ("BPA") Gribbons' Human/Narcotic Detections Dog ("HNDD") alerted to the Vehicle.

19. In the secondary inspection area, BPA Gribbons' HNDD again alerted to the Vehicle. BPA Gribbons asked Defendant if he had ever been arrested before, and Defendant stated that he had been arrested at the Port of Entry for attempting to smuggle cocaine. Upon searching the Vehicle, BPA Gribbons found a total of seven (7) individually wrapped packages that lab tests subsequently confirmed to be Fentanyl, weighing approximately 7.93 kilograms, in factory storage compartments under floor mats in the back seat on both the driver and passenger sides of the Vehicle. BPA Gribbons placed Defendant under arrest.

20. Officers seized the Target Device incident to Defendant's arrest.[1] After being advised of and waiving his rights under *Miranda*, Torres indicated that three to four months ago the Target Device was left in a box on the front steps of his residence. Torres indicated that the next day, the phone rang, and the caller informed the Defendant that he owed a favor to the caller in relation to Defendant's arrest in 2011 for attempting to smuggle cocaine from Mexico into the United States. Defendant indicated that because he had lost the load of cocaine in 2011, he was required to move money.

21. Defendant further stated that one week prior to February 12, 2019, Defendant received another phone call to the Target Device and was directed to El Centro, California. Defendant indicated at noon on February 12, 2019 he was parked in the parking lot of the Target on Imperial Avenue in El Centro, California and received another call. Defendant was directed to a shopping cart that was in the vicinity of his Vehicle, informed that a black

---

[1] On February 12, 2019, Defendant gave consent to search the Target Device and another cell phone in his possession. DEA agents manually reviewed the contents of the Target Device but were unable to forensically download the Target Device at the time, unlike Defendant's other phone. Nothing from the February 12, 2019 manual review is offered to support probable cause in this application.

I also declare that nothing from the prior search of the Target Device informs my decision to submit this affidavit to obtain a search warrant for the Target Device. I seek this affidavit independent of any information that was seen or reviewed (or not seen) in prior searches.

7

trash bag was in the shopping cart, and told to smuggle the packages north via Glamis in the direction of Parker, California. Defendant was told to expect another phone call with further instructions.

22. Defendant admitted to receiving seven (7) rectangular, vacuum-sealed packages in the Target parking lot, which were yellow in color, and hiding them in the factory compartments of his Vehicle. Defendant indicated that he believed the packages contained currency but could not explain why currency would be smuggled north despite Defendant's understanding that narcotics are typically smuggled north and that currency is typically smuggled south by drug trafficking organizations.

23. On February 13, 2019, a complaint was filed charging Defendant with Possession of a Controlled Substance with Intent to Distribute in violation of Title 21, United States Code, Section 841(a)(1), in the Southern District of California in case number 19-MJ-08475.

24. Based upon my experience and investigation in this case, I believe that the Defendant, as well as other persons, were involved in an ongoing conspiracy to possess with intent to distribute fentanyl or some other prohibited drugs. Based on my experience investigating narcotics smugglers, I also believe that Defendant may have used the Target Device to coordinate with co-conspirators regarding the delivery of the fentanyl, and to otherwise further this conspiracy inside, and potentially outside, of the United States.

25. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos, and other digital information are stored in the memory of the **Target Device**.

26. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into

8

the United States. Co-conspirators communicate with one another in efforts to ensure success in transporting their valuable cargo to its destination within the United States. In this case, Defendant admitted to receiving the phone three to four months prior to his arrest from an individual who facilitating Defendant's drug trafficking in the instant case. Defendant further stated that co-conspirators to the crime charged contacted him on the Target Device numerous times in the months, days, and hours leading up to his arrest. Defendant also stated that he was told to expect another call from the individuals who facilitated the venture as he drove north, and the Target Device may show missed calls corroborating that fact and identifying the phone number of the individuals who provided Defendant with the packages found in Defendant's Vehicle. Given this, I request permission to search the Target Device for items listed in Attachment B beginning on August 12, 2018, up to and including February 12, 2019. That date range is based on Defendant's statement that the phone was provided to him approximately three to four months prior, accounting for two additional months given that Defendant's memory regarding when he received the phone was not precise.

## METHODOLOGY

27. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device

or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

30. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the **Target Device** to facilitate violations of Title 21, United States Code, Section 841.

31. Because the **Target Device** was promptly seized during the investigation of Defendant trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the **Target Device**.

32. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the

item described in Attachment A and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

John Chase
DEA Special Agent

Subscribed and sworn to before me this 26th day of March, 2019.

The Honorable Ruth Bermudez Montenegro
United States Magistrate Judge

11